# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | |
|---|---|
| EVANSTON INSURANCE COMPANY, | )<br>)<br>) |
| Plaintiff, | ) Case No.<br>) 1:21-CV-874 |
| v. | )<br>) |
| CAROLINA FOREST PRODUCTS, INC., NAUTILUS INSURANCE COMPANY, and KEAVE W. BAYES | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

## COMPLAINT FOR DECLARATORY JUDGMENT

Evanston Insurance Company ("Evanston") states as follows for its Complaint for Declaratory Judgment against Carolina Forest Products, Inc. ("CFP"), Nautilus Insurance Company ("Nautilus"), and Keave W. Bayes ("Bayes"):

### NATURE OF THE ACTION

1. This is an insurance coverage action arising out of a personal injury lawsuit that Bayes brought against CFP and other defendants. Bayes alleges he sustained bodily injuries at a logging project in Moore County when a log being loaded onto his tractor-trailer fell and struck him in the head (the "Underlying Lawsuit").

2. CFP entered an agreement with the property owner to cut logs on a certain tract of land and then sell the logs. CFP retained Craig Rutland to cut the

logs and transport them to various mills for sale, including the International Paper mill in Riegelwood, North Carolina. Craig Rutland then retained Bayes to transport logs to the International Paper Mill.

3. The insurance policy Evanston issued to CFP expressly excludes coverage for bodily injury to CFP's contractors and such contractors' subcontractors. The Underlying Lawsuit is excluded because Rutland was CFP's contractor and Bayes was injured while he was working as Rutland's subcontractor.

4. In the alternative, even if coverage was provided by the Evanston Policy, which it is not, the coverage would be limited to $50,000 inclusive of defense costs pursuant to the Contractor's Management Limitation Endorsement.

5. CFP also qualifies as an insured under a policy that Nautilus issued to Rutland. CFP is entitled to primary coverage from Nautilus, and any coverage for CFP under the Evanston Policy is excess of coverage available to CFP under the Nautilus Policy.

6. Nautilus, however, has refused to defend CFP on a primary basis. Therefore, Evanston agreed to provide a defense to CFP for the Underlying Lawsuit under a complete reservation of rights to limit or deny coverage. Evanston was forced to assume CFP's defense because Nautilus breached its contractual obligations to CFP. Therefore, Nautilus should reimburse Evanston for all costs

Evanston has incurred and will incur in defending CFP against the Underlying Lawsuit.

7. In summary, Evanston brings this action to obtain a declaration that it has no obligation to defend or indemnify CFP because the Underlying Lawsuit is excluded from coverage. In the alternative, Evanston seeks a declaration that any coverage owed to CFP is limited to $50,000 inclusive of defense costs and is excess to the coverage provided by the Nautilus Policy.

8. Evanston also seeks a declaration that Nautilus must reimburse all costs Evanston incurred in defense of CFP.

## THE PARTIES

9. Evanston is an Illinois Domestic Surplus Lines Insurer with its principal place of business in Illinois.

10. CFP is a North Carolina corporation organized under North Carolina law with its principal place of business in Sanford, North Carolina.

11. Nautilus is an Arizona company with its principal place of business in Arizona.

12. Bayes is a citizen of Lee County, North Carolina. As a plaintiff in the underlying lawsuit at issue, Bayes has an interest in the outcome of this lawsuit. Evanston seeks no affirmative relief from Bayes other than to bind him to the outcome of this insurance coverage dispute.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this lawsuit under 28 U.S.C. § 2201 because it presents an actual controversy seeking a declaration of rights regarding duties and obligations under the insurance policy Evanston issued to CFP and the insurance policy issued by Nautilus.

14. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332(a), as the plaintiff and defendants are citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interest and costs.

15. Venue is proper pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the request for insurance coverage occurred in this district.

## FACTUAL BACKGROUND

16. The Underlying Lawsuit is pending in the Superior Court of Johnston County, North Carolina, captioned *Keave W. Bayes v. Kenneth Darrell Andrews, Craig Rutland, and Carolina Forest Products, Inc.*, case number 20 CVS 001358. A true and correct copy of the complaint in the Underlying Lawsuit is attached as Exhibit A.

17. In the Underlying Lawsuit, Bayes alleges that he was injured on February 14, 2018 when a log fell on his head while he was standing next to his tractor-trailer rig. (Ex. A at ¶6.)

18. The Underlying Lawsuit alleges Kenneth Andrews was using a loader owned by Andrews, CFP, and Craig Rutland to load wood into the trailer on Bayes's truck when the log fell and struck Bayes. (*Id.* at ¶¶20-22, 27-28.)

19. The Underlying Lawsuit alleges that CFP is liable for Andrews's and Rutland's negligence and that CFP negligently failed to maintain adequate supervision of the cutting and loading of the logs. (*Id.* at ¶¶54-56.)

20. Certain discovery has been conducted in the Underlying Lawsuit and it revealed the following information.

21. CFP entered an agreement with a property owner in Moore County to cut logs on a certain tract of land and then sell the logs.

22. CFP retained Rutland to cut the logs on this tract of land and transport them to the saw mills. Andrews was employed by Rutland to load the cut logs onto trucks.

23. Rutland then retained Bayes to transport the logs to the International Paper mill in Riegelwood.

24. Andrews was loading logs onto Bayes's trailer when Bayes suffered his injuries.

## The Evanston Policy

25. Evanston issued commercial general liability insurance policy number 3EP2813 to CFP for the policy period January 08, 2018, to January 08, 2019 (the "Evanston Policy"). A copy of the Evanston Policy is attached as Exhibit B.

26. The Evanston Policy's Coverage A, "Bodily Injury and Property Damage Liability," provides coverage for sums that the insured becomes legally obligated to pay as damages because of bodily injury to which the policy applies. Specifically, the insuring agreement for Coverage A provides, in pertinent part:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

\* \* \*

**SECTION I – COVERAGES**

**COVERAGE A – BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

    **a.** We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. We may, at our discretion, investigate any "occurrence" and settle any claim or "suit" that may result. . . .

\* \* \*

(Ex. B at EVANSTON_27)

# COUNT I
# DECLARATORY RELIEF
# Injury to Contractors Exclusion

27. Evanston incorporates paragraphs 1-26 as though fully restated herein.

28. The Underlying Lawsuit is excluded from Coverage A by the "Bodily Injury To Contractors, Subcontractors, Or Independent Contractors" exclusion (the "Injury to Contractors Exclusion").

29. The Injury to Contractors Exclusion precludes coverage for "bodily injury" to CFP's contractors and to any such contractors' subcontractors. The exclusion states as follows:

\*     \*     \*

**B.** The following exclusion is added to Bodily Injury And Property Damage Liability:

This insurance does not apply to:

**Bodily Injury To Contractors, Subcontractors, Or Independent Contractors**

"Bodily injury" to any:

**(1)** Contractor, subcontractor, or independent contractor while working on behalf of any insured;

**(2)** Employee, volunteer worker, leased worker, or temporary worker of any contractor, subcontractor, or independent contractor indicated in Paragraph **(1)** above;

**(3)** Additional contractor, subcontractor, or independent contractor of any contractor, subcontractor, or

> > independent contractor indicated in Paragraph **(1)** above, including the employees, volunteer workers, leased workers, or temporary workers of such additional contractor, subcontractor, or independent contractor; or
>
> > **(4)** Any other person who performs labor in any capacity for or on behalf of any person indicated in Paragraph **(1)**, **(2)**, or **(3)** above, with or without any form of compensation.
>
> This exclusion applies:
>
> > **(a)** Even if the claim against any insured alleges negligence or other wrongdoing in the:
> >
> > > **(i)** Selection, hiring, or contracting;
> > >
> > > **(ii)** Investigation;
> > >
> > > **(iii)** Supervision or monitoring;
> > >
> > > **(iv)** Training; or
> > >
> > > **(v)** Retention of any contractor, subcontractor, or independent contractor for whom any insured is or was legally responsible and whose "bodily injury" would be excluded by Paragraph **(1)**, **(2)**, **(3)**, or **(4)** above;
> >
> > **(b)** Whether the insured may be liable as an employer or in any other capacity;
> >
> > **(c)** To any obligation to share damages with or repay someone else who must pay damages because of the injury; and
> >
> > **(d)** To liability assumed by the insured under an "insured contract".

(Ex. B at EVANSTON_62-63)

30. CFP entered an agreement with a property owner in Moore County to cut logs on a certain tract of land and then sell the logs.

31. Rutland was retained by CFP to cut the timber on the property and transport the timber to various mills, including the International Paper mill in Riegelwood.

32. Bayes was retained by Rutland to transport timber from the property to the International Paper mill.

33. Bayes was Rutland's subcontractor, and his injury happened while Rutland was conducting logging operations for CFP.

34. Because the Underlying Lawsuit alleges injuries to a subcontractor of CFP's contractor, the Injury to Contractors Exclusion applies and there is no coverage for the Underlying Lawsuit under the Evanston Policy.

35. As the Underlying Lawsuit is excluded from coverage, Evanston has no duty to defend or indemnify CFP against the Underlying Lawsuit.

WHEREFORE Evanston prays that the Court enter judgment in its favor:

a. Declaring that the Evanston Policy's Bodily Injury To Contractors, Subcontractors, Or Independent Contractors exclusion precludes coverage for all claims asserted in the Underlying Lawsuit;

b. Declaring that Evanston has no duty to defend or indemnify CFP against the Underlying Lawsuit; and

c. Awarding Evanston such other and further relief that the Court deems just and proper.

# COUNT II
# DECLARATORY RELIEF
## In the Alternative: Limitation - Contractor or Subcontractor Management Endorsement

36. Evanston incorporates paragraphs 1-26 as though fully restated herein.

37. The Evanston Policy includes a "Limitation – Contractor or Subcontractor Management" endorsement (the "Contractor Management Limitation Endorsement").

38. The Contractor Management Limitation Endorsement requires CFP to ensure that its contractors carry liability insurance providing certain minimum limits of coverage to CFP. If CFP incurs liability and its contractor does not have the required coverage, then the limit of coverage for CFP under the Evanston Policy is reduced to $50,000.

39. The Contractor Management Limitation Endorsement states as follows:

**LIMITATION – CONTRACTOR
OR SUBCONTRACTOR MANAGEMENT**

\* \* \*

**SCHEDULE**

| | |
|---|---|
| Minimum General Aggregate Limit (Other Than Products/ Completed Operations): | $2,000,000 |
| Minimum Products/Completed Operations Aggregate Limit: | $2,000,000 |
| Minimum Each Occurrence Limit: | $2,000,000 |

A. The following is added to Section **IV** – Commercial General Liability Conditions:

**Contractor Or Subcontractor Management**

Prior to the commencement of any work performed for or on behalf of the insured by a contractor or subcontractor, the insured must require, secure and maintain a certificate of insurance that confirms that the contractor or subcontractor:

    a. Carries Commercial General Liability coverage with limits that are equal to or greater than the limits shown in the Schedule above; and

    b. Names you as an additional insured on such coverage.

If no limits are shown in the Schedule above, then the limits carried by the contractor or subcontractor must be equal to or greater than the limits shown in the Declarations of this Coverage Form.

B. If all of the conditions of the Contractor Or Subcontractor Management condition are not met or the insured fails to provide proof of compliance with such conditions at the time of an "occurrence", the following is added to Section **III** – Limits Of Insurance and will apply to such "occurrence":

Subject to Paragraph **2.** of Section **III** – Limits Of Insurance, $50,000 is the most we will pay for the sum of all:

    a. Damages under Coverage **A**;

    b. Damages under Coverage **B**;

    c. Medical Expenses under Coverage **C**;

      **d.**     Loss adjustment expenses;

      **e.**     Supplementary payments; and

      **f.**     Defense costs;

because of all "bodily injury", "property damage", and "personal and advertising injury" arising out of any one "occurrence" when the insured fails to meet or provide proof of compliance with the Contractor Or Subcontractor Management condition.

Once this limit is exhausted, we are no longer obligated to defend or indemnify the insured for such "occurrence".

            \*     \*     \*

(Ex. B at EVANSTON_59)

40. CFP entered an agreement with a property owner in Moore County to cut logs on a certain tract of land and then sell the logs.

41. Rutland was retained by CFP to cut the timber on the property and transport the timber to various mills including the International Paper mill in Riegelwood.

42. Accordingly, CFP retained Rutland as a contractor or subcontractor to assist with logging the property.

43. Pursuant to the Contractor or Subcontractor Management Limitation Endorsement, CFP was required to ensure that Rutland carried general liability insurance providing coverage to CFP as an additional insured with an each-occurrence limit of at least $2 million.

44. Rutland is insured by Nautilus under insurance policy no. NN864113, effective November 12, 2017 to November 12, 2018 (the "Nautilus Policy"). A copy of the Nautilus Policy is attached as Exhibit C.

45. The Nautilus Policy includes an "Additional Insured – Owners, Lessees or Contractors – Scheduled Person or Organization" Endorsement (the "Nautilus AI Endorsement"). (Ex. C at EVANSTON_85.)

46. The Nautilus AI Endorsement provides that CFP qualifies as an insured under the Nautilus Policy.

47. The Nautilus Policy provides $1 million in coverage per Occurrence. Thus, the Nautilus Policy provides only $1 million in coverage for the Underlying Lawsuit.

48. Because the Nautilus Policy does not afford $2 million in coverage to CFP for the Underlying Lawsuit, the conditions of the Contractor Management Limitation Endorsement were not met. Pursuant to the endorsement, if the Evanston Policy provided coverage for the Underlying Lawsuit (which it does not), $50,000 would be the most Evanston is required to pay for damages covered by the Policy as well as loss adjustment expenses, supplementary payments, and defense costs incurred on behalf of CFP in the Underlying Lawsuit.

- 13 -

Case 1:21-cv-00874   Document 1   Filed 11/12/21   Page 13 of 20

WHEREFORE Evanston prays in the alternative that the Court enter judgment in its favor:

a. Declaring that the Evanston Policy's Contractor Or Subcontractor Management Limitation Endorsement limits any coverage obligation of Evanston with respect to the Underlying Lawsuit to $50,000 for the sum of all damages under Coverage A and all loss adjustment expenses, supplementary payments, and defense costs because of Bayes's alleged injuries;

b. Granting Evanston such other and further relief as the Court deems just and proper.

## COUNT III
## DECLARATORY RELIEF
**In the alternative, Evanston Provides Excess Coverage Only to CFP**

49. Evanston incorporates paragraphs 1-26 as though fully restated herein.

50. Any coverage that the Evanston Policy provides to CFP for the Underlying Lawsuit applies excess of coverage provided by the Nautilus Policy.

51. Evanston's "Other Insurance" condition states:

**4.  Other Insurance**

If other valid and collectible insurance is available to the insured for a loss we cover under Coverages A or B of this Coverage Part, our obligations are limited as follows:

    **a.  Primary Insurance**

        This insurance is primary except when Paragraph **b**. below applies. If this insurance is primary, our obligations are not

affected unless any of the other insurance is also primary. Then, we will share with all that other insurance by the method described in Paragraph **c.** below.

**b. Excess Insurance**

**(1)** This insurance is excess over:

**(a)** Any of the other insurance, whether primary, excess, contingent or on any other basis:

**(i)** That is Fire, Extended Coverage, Builder's Risk, Installation Risk or similar coverage for "your work";

**(ii)** That is Fire insurance for premises rented to you or temporarily occupied by you with permission of the owner;

**(iii)** That is insurance purchased by you to cover your liability as a tenant for "property damage" to premises rented to you or temporarily occupied by you with permission of the owner; or

**(iv)** If the loss arises out of the maintenance or use of aircraft, "autos" or watercraft to the extent not subject to Exclusion **g.** of Section **I** - Coverage **A** - Bodily Injury And Property Damage Liability.

**(b)** Any other primary insurance available to you covering liability for damages arising out of the premises or operations, or the products and completed operations, for which you have been added as an additional insured.

**(2)** When this insurance is excess, we will have no duty under Coverages **A** or **B** to defend the insured against any "suit" if any other insurer has a duty to defend the insured against that "suit". If no other insurer defends, we will undertake to do so, but we

- 15 -

> will be entitled to the insured's rights against all those other insurers.
>
> **(3)** When this insurance is excess over other insurance, we will pay only our share of the amount of the loss, if any, that exceeds the sum of:
>
> **(a)** The total amount that all such other insurance would pay for the loss in the absence of this insurance; and
>
> **(b)** The total of all deductible and self-insured amounts under all that other insurance.
>
> **(4)** We will share the remaining loss, if any, with any other insurance that is not described in this Excess Insurance provision and was not bought specifically to apply in excess of the Limits of Insurance shown in the Declarations of this Coverage Part

(Ex. B at EVANSTON_38)

52. Nautilus's "Other Insurance" condition includes the same provisions. (Ex. C at EVANSTON_80)

53. CFP is an additional insured under the Nautilus Policy for liability arising out of the logging operations that resulted in Bayes's injury.

54. Therefore, any coverage Evanston owes to CFP for the Underlying Lawsuit is excess.

55. Pursuant to provision 4.a., of the "Other Insurance" condition, the Nautilus Policy provides primary coverage to its insureds unless paragraph b. applies. No provision within paragraph b. applies. Thus, Nautilus provides primary coverage to CFP.

WHEREFORE Evanston prays in the alternative that the Court enter judgment in its favor:

a. Declaring that, with respect to the Underlying Lawsuit, coverage for CFP under the Evanston Policy is excess of coverage provided by the Nautilus Policy;

b. Declaring that Evanston is not required to pay any defense costs or any indemnity on behalf of CFP in the Underlying Lawsuit until the Nautilus Policy has been properly exhausted; and

c. Granting Evanston such other and further relief as the Court deems just and proper.

## COUNT IV
## EQUITABLE SUBROGATION
### Nautilus Must Reimburse Evanston for CFP's Defense Costs

56. Evanston incorporates paragraphs 1-26 as though fully restated herein.

57. CFP qualifies as an insured under the Nautilus Policy.

58. The Nautilus Policy provides primary coverage to CFP for the Underlying Lawsuit.

59. On or about May 15, 2020, CFP tendered the Underlying Lawsuit to Rutland and Nautilus demanding that Nautilus defend and indemnify CFP against the Underlying Lawsuit. A copy of the May 15, 2020 letter is attached as Exhibit D.

61. To date, Nautilus has refused to defend CFP on a primary basis against the Underlying Lawsuit.

62. Nautilus's refusal to defend CFP is a breach of its obligations under the Nautilus Policy.

63. Evanston is defending CFP in the Underlying Lawsuit subject to a reservation of rights. Evanston has paid and continues to pay the full cost of CFP's defense in the Underlying Lawsuit.

64. Evanston was forced to defend CFP and protect CFP's interests in the Underlying Lawsuit because of Nautilus's refusal to defend CFP in breach of the Nautilus Policy.

65. Pursuant to its Policy and North Carolina law, Evanston is subrogated to CFP's rights under the Nautilus Policy for the full extent of the defense costs Evanston has incurred and continues to incur in the Underlying Lawsuit. The Evanston Policy provides:

> **SECTION IV-COMMERCIAL GENERAL LIABILITY CONDITIONS**
>
> * * *
>
> 8. **Transfer of Rights of Recovery Against Others To Us**
>
>    If the insured has rights to recover all or part of any payment we have made under this Coverage Part, those rights are transferred to us. The insured must do nothing after loss to impair them. At our request, the insured will bring "suit" or transfer those rights to us and help us enforce them.

(Ex. B at EVANSTON_39.)

66. Evanston is entitled to reimbursement from Nautilus for all amounts, past and future, Evanston incurs to defend CFP against the Underlying Lawsuit.

WHEREFORE Evanston prays that the Court enter judgment in its favor:

a. Ordering Nautilus to pay Evanston the full amount of all costs expended by Evanston to defend CFP against the Underlying Lawsuit, plus interest and costs; and

b. Granting Evanston such other and further relief as the Court deems just and proper.

Dated this 12th day of November, 2021.

/s/ Seth M. Friedman
Seth M. Friedman
North Carolina Bar No. 46543
LEWIS BRISBOIS BISGAARD
 & SMITH LLP
600 Peachtree Street, Suite 4700
Atlanta, Georgia 30308
(404) 348-8585
(404) 467-8845 (Fax)
seth.friedman@lewisbrisbois.com


Christopher J. Nadeau
*(special appearance forthcoming)*
Nicholas E. Kelly
*(special appearance forthcoming)*
NICOLAIDES FINK THORPE

MICHAELIDES SULLIVAN LLP
10 South Wacker Drive, Suite 2100
Chicago, IL 60606
T: (312) 585-1456
cnadeau@nicolaidesllp.com
nkelly@nicolaidesllp.com

*Attorneys for Plaintiff Evanston Insurance Company*